UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
IINDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINA L. ALLEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  No. 1:15-cv-0317-DKL-WTL |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

*Entry on Judicial Review*

Plaintiff Christina L. Allen commenced this action, seeking judicial review of the Social Security Administration's denial of her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). The parties have consented to have the undersigned Magistrate Judge conduct all proceedings in the case. The Court rules as follows.

**Background**

Allen, who is 35 years old and has a high school education, alleges disability beginning on September 1, 2010, due to anxiety, depression, PTSD (post-traumatic stress disorder from sexual abuse), hepatitis C, cervical cancer, and ADHD (attention deficit hyperactivity disorder). [R. 122-24.] She has past work experience as a laborer, cashier, and waitress. [R. 124.] Her claim was denied initially and on reconsideration. She

requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in October 2013. Allen, who was represented by counsel, appeared and testified. A vocational expert also testified.

Allen testified that she was unable to concentrate, focus, or listen and that she "forget[s] everything." [R. 38.] She had been retained in the third grade and had taken special education classes. [R. 290.] In October 1996, at the age of 16, Allen was administered the Wechsler Intelligence Scale for Children and obtained the following scores: verbal IQ of 78, performance IQ of 86, and full scale IQ of 80. [R. 194, 198.] (She obtained scores of 80, 82, and 79, on verbal, performance, and full scale, respectively, in 1993. [R. 203.] Because she was under 16 at that time, those IQ test results are only considered valid for two years. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10).) Her scores suggested that she was "functioning in the low average to borderline range of ability." [R. 200.] She was administered the Kaufman Test of Educational Achievement and obtained a total battery score "well below average range." [*Id.*]

In May 2012, David E. McIntosh, Ph.D., HSPP, ABPP, conducted a diagnostic psychological interview and mental status examination of Allen. A Wechsler Adult Intelligence Scale was administered to assess her cognitive abilities. (Allen was just shy of 32 years of age at the time.) Allen achieved a full-scale IQ of 69, in the extremely low range [R. 291], with "scores ranging from the extremely low range … to the borderline range … to the low average range." [R. 295, 296.] (Generally, IQ scores of 65-75 or less reflect intellectual disability. *Am. Psychiatric Ass'n: Diagnostic and Statistical Manual for Mental Disorders, Fifth Edition* 37 (*DSM-5*) (5th ed. 2013)).

Allen reported a past addiction to Oxycontin and cocaine use. [R. 290.] McIntosh found it "possible [that] the decline of her cognitive abilities from where they were in 1996 is at least partially due to her reported history of substance abuse." [*Id*.] He concluded that Allen "can be expected to experience mild difficulty attending to a simple, repetitive task continuously for a two-hour period relative to her same-aged peers" and "could be expected to work at a pace mildly to moderately slower than that of her same-aged peers." [R. 294.] He assessed borderline intellectual functioning, borderline personality, and other disorders. [R. 295.]

Also in May 2012, Amy S. Johnson, Ph.D., completed a Psychiatric Review Technique for Allen. She found that Allen had several disorders, including Major Depressive Disorder in partial remission, but did not find that she had an intellectual disability. [See R. 305.] Johnson completed a Mental Residual Functional Capacity Assessment, finding that Allen was not significantly limited in some areas, moderately limited in others, but not markedly limited in any area. [R. 297-99.] Johnson opined that Allen's "attention and concentration" were "moderately impacted but appear reasonable for tasks" and that Allen appeared "to be able to tolerate superficial, casual interactions with others." [R. 299.] Johnson concluded that Allen "has the mental capacity to understand, remember, and follow simple instructions" and was "restricted to work that involves brief, superficial interactions with fellow workers, supervisors and the public." [R. 299.] She further concluded that "[w]ithin these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, [Allen] is able to sustain

attention and concentration skills to carry out work-like tasks with reasonable pace and persistence." [R. 299.]

In October 2013, at the age of 33, Allen underwent a psychological evaluation performed by Kenneth D. McCoy, Ph.D., H.S.P.P., a clinical neuropsychologist. [R. 391-97.] As part of that evaluation, McCoy administered the Wechsler Adult Intelligence Scale to measure her cognitive ability. Allen obtained a standard score of 75, placing her overall level of cognitive functioning within the borderline range. [R. 392.] She obtained scores in the borderline range for verbally oriented tasks (verbal score of 72), non-verbal perceptual tasks, and tasks requiring her to demonstrate an ability to mentally manipulate information stored in short-term memory. [R. 393.] She earned a score in the average range for her ability to process information quickly and efficiently and maintain her attention. [*Id.*] McCoy assessed Allen with borderline intellectual functioning. [R. 394.]

Two months later, the ALJ issued his decision denying benefits. Using the five-step inquiry for social security claims, *see* 20 C.F.R. § 404.920(a), he found that Allen had not engaged in substantial gainful activity since the application date in February 2012. [R. 14.] The ALJ found that she had severe impairments of anxiety, depression, opioid dependence, benzos dependence, and borderline intellectual functioning, but that none of these met or medically equaled the severity of a listed impairment. [*Id.* at 14-15.] He then found that Allen had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to work involving simple, repetitive tasks requiring requiring no independent judgment regarding

>  basic work processes; work goals from day to day should be static and predictable; and she should have only occasional, superficial contact with co-workers and supervisors, but no contact with the general public.

[R. 16-17.] The ALJ determined that given her RFC, Allen was able to perform her past relevant work as a wire worker and foam fabricator. [R. 20.] He therefore decided that she was not under a disability as defined in the Act. [R. 22.] The Appeals Council denied review. Allen then filed this action, seeking judicial review of the agency's decision.

## Discussion

Judicial review of the ALJ's decision is limited. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). The decision will be upheld if the ALJ applied the correct legal standards and the decision is supported by substantial evidence. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 795 F.3d at 718 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). A court may not reweigh the facts or evidence or make its own credibility determinations. *Id.* An ALJ need only "minimally articulate" his reasons for rejecting or accepting evidence, which has been described as a very "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). An ALJ need not mention every piece of evidence, but must build a "logical bridge" from the evidence to his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Allen raises three main arguments: (1) the ALJ's finding that she did not meet or equal Listing 12.05(C) was not supported by substantial evidence; (2) the ALJ's failure to summon a medical advisor to testify as to whether her impairments met or equaled a

listed impairment requires reversal; and (3) the ALJ failed to include her moderate impairments in social functioning, concentration, persistence, and pace in his hypothetical to the VE.

Starting with the ALJ's step 3 finding, Listing 12.05(C) provides:

> 12.05 *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
> ....
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05(C). Thus, to meet the Listing, a claimant must prove that she meets these requirements: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" (before age 22), (2) "a valid verbal, performance, or full scale IQ of 60 through 70," and (3) another impairment "imposing an additional and significant work-related limitation of function." *Minnick v. Colvin*, No. 14 CV 50105, 2016 WL 693260, at *4 (N.D. Ill. Feb. 22, 2016); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(A) ("If an impairment "satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing."). As another district court has observed, the regulation's reference to "onset of the impairment before age 22" supports the conclusion that *both* significantly subaverage general intellectual functioning *and* deficits in adaptive functioning must

have developed before age 22. *Minnick*, 2016 WL 693260, at *4; *see also Wells v. Colvin*, No. 4:14-CV-16-RLM-JEM, 2015 WL 1402208, at *2-3 (N.D. Ind. Mar. 25, 2015) (upholding ALJ's conclusion that claimant didn't meet Listing 12.05 because his subaverage intellectual functioning did not manifest before the age of 22). Requiring that subaverage intellectual functioning manifests before age 22 fits with the generally accepted medical definition of "intellectual disability." *See Hall v. Florida*, 134 S. Ct. 1986, 1994 (2014) (stating the medical community defines intellectual disability by three criteria, including onset during the developmental period); *DSM-5* 33 (providing that intellectual disability has three diagnostic criteria including "[o]nset of intellectual *and* adaptive deficits during the developmental period") (emphasis added). Thus, the ALJ did not err in requiring Allen to prove that her cognitive issues, including subaverage intellectual functioning manifested before age 22.

      Though Allen may be able to prove that she met the second and third criteria of Listing 12.05(C)—she recently obtained a valid verbal and full scale IQ of 69, and she has other mental impairments that the ALJ found significantly limit her ability to perform basic work activities, namely anxiety and depression—she is unable to satisfy the diagnostic description in the introductory paragraph of the Listing, which she must do. The ALJ found that her "cognitive issues did not manifest prior to age 22." [R. 15.] Because the ALJ found that she did not satisfy the diagnostic description in the introductory paragraph, it is not enough for her to show that she met the (C) criteria. Allen likens her case to *King*, but that case is inapposite. In that case, there was no evidence that before age 22, the claimant had scored 80 or higher on an IQ test.

7

Allen has not challenged the ALJ's finding that her cognitive issues did not manifest before age 22. So any such challenge is forfeited. But even if she had raised such a challenge, the ALJ's finding must be upheld. The ALJ's finding was based on the fact that Allen's IQ scores put her in the "well above the mild mental retardation range." And they did: at the age of 16, Allen achieved a verbal IQ of 78, a performance IQ of 86, and full scale IQ of 80. [R. 194, 198.] These scores suggested that she was "functioning in the low average to borderline range of ability." [R. 200.] The ALJ's finding that Allen's cognitive issues did not manifest before age 22 was based on substantial evidence.

Allen argues that the listing does not require a formal diagnosis of intellectual disability, which may be true. *See King v. Barnhart*, No. 1:06-CV-0381DFHTAB, 2007 WL 968746, at *4 (S.D. Ind. Feb. 26, 2007). However, the ALJ did not find that Allen failed to meet or equal the listing because she lacked a formal diagnosis of intellectual disability.

Moving on to Allen's second argument, an ALJ must consider an expert's opinion on the issue of whether a claimant's impairment meets or equals a listed impairment. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). A state agency reviewing physician or psychologist's opinion on a disability form satisfies this requirement and provides substantial evidence on the medical equivalence issue. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (concluding that state agency physician's opinions in disability forms as to whether claimant's condition met a listing constituted substantial evidence supporting the ALJ's finding).

Given that the ALJ relied on such opinions in this case, Allen argues that the opinions of the state-agency review physicians were dated and "did not consider all of

the evidence in the record. Presumably if they had reviewed all of the evidence they would have reasonably determined she was totally disabled." [*Pl.'s Br.* at 10.] She specifically refers to the 2013 psychological treatment records, which she says "proved her continuing total disability." [*Id.*] Yet Allen offers no explanation of how those records proved her disability. The Court will not make arguments for her.

Furthermore, the record shows that the results of the 2013 cognitive assessment reflected that Allen was "[b]orderline overall intellectual functioning." [R. 394.] She scored 75 on the Wechsler Adult Intelligence Scale IQ test. [R. 392.] This score does not show subaverage intellectual functioning. And the 2013 score and evaluation do not refute the valid IQ scores Allen achieved before age 22. Even though "a person's IQ is ordinarily presumed to remain stable over time in the absence of any evidence of a change in his or her intellectual functioning," *Maresh v. Barnhart,* 438 F.3d 897, 900 (8th Cir.2006), in this case, the various IQ scores tend to evidence a decrease in Allen's intellectual functioning since the developmental period.

The ALJ did not simply assume that Allen's combined impairments failed to meet or equal a listed impairment. Rather, he considered and provided a discussion of the issue in his decision. An ALJ is not required to obtain an updated opinion unless he finds that additional medical evidence "may change the State agency medical or psychological consultant's finding" as to medical equivalency. *See S.N.B. v. Colvin*, No. 1:14-CV-01371-SEB-DML, 2016 WL 775787, at *5 (S.D. Ind. Feb. 9, 2016); *Graves v. Astrue,* No. 1:11–cv–249–SEB–DKL, 2012 WL 4019533, at *3 (S.D. Ind. Sept. 11, 2012) (citing Social Security

Ruling 96–6p). The Court finds nothing in the record that may have changed the state agency reviewer's findings.

Lastly, according to Allen, the ALJ omitted her limitations in social functioning as well as concentration, persistence, and pace from his hypothetical to the vocational expert ("VE"). An ALJ is generally required to "orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 n.3 (7th Cir. 2010) ("[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record."). Here, the ALJ did account for Allen's moderate limitations in concentration, persistence, and pace and social functioning. The ALJ asked the VE to assume an individual with Allen's age, education and work experience, who has no physical limitations but was "limited to work involving only simple, repetitive tasks, requiring no independent judgment regarding the primary work processes with static and predictable working goals from day to day. This individual should not be required to have contact with the general public to perform the functions of the job and only occasional superficial contact with supervisors and coworkers" and asked whether the hypothetical individual could perform any of Allen's past work. [R. 45-46.] The VE answered in the affirmative. [R. 46.] This hypothetical accounts for the specific limitations in social functioning and concentration, persistence, and page that Dr. Johnson found Allen to have. What's more, the hypothetical was even more restrictive than Dr. Johnson's opinion: the ALJ imposed a restriction on no contact

10

with the general public, whereas Dr. Johnson limited Allen to "superficial, casual interactions with others."

Allen also makes sweeping, undeveloped arguments that the ALJ's decision "fails to build an accurate and logical bridge" from the evidence to the conclusions and that it is "contrary to the medical-psychological evidence." [*Pl.'s Br.* at 9.] Because these arguments were not developed, they have been forfeited. *See, e.g.*, *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again that perfunctory and undeveloped arguments … are waived."). Besides, the Court has reviewed the medical-psychological evidence in the record and finds that it supports the ALJ's finding that Allen did not meet or equal Listing 12.05(C). And the ALJ accurately and logically bridged the evidence in the record to his step 3 conclusion (as well as the other conclusions in his decision), as required. *See, e.g.*, *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## Conclusion

For the foregoing reasons, the undersigned finds that the agency's decision should be affirmed. Final judgment will be entered accordingly.

ENTERED THIS DATE:  03/15/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record